Mr. Justice ITagner
delivered the opinion of the court.
In June, 1879, the plaintiff recovered a judgment against the defendant in the Circuit Court, in an action of tort, which was affirmed by this court in General Term. An appeal was taken to the Supreme Court of the United States, which, at the October Term, 1882, passed the following order :
“ Whereas, in the present term of October, in the year of our Lord one thousand eight hundred and eighty-two, the said cause came on to be heard before the said Supreme Court, on the said transcript of record, and was'argued by counsel. On consideration whereof : It is now here ordered and adjudged by this court, that the judgment of the said Supreme Court, in this cause, be, and the same is hereby affirmed with costs and interest, until paid, at the same rate per annum that similar judgments bear in the courts of the District of Columbia.”
Upon the reception of this mandate by the court of the District, the defendant tendered payment of the judgment and costs without interest, but the plaintiff refused to receive *459 this amount unless the defendant should also pay the interest fi’om the date of the recovery of the judgment in the Circuit •Court. The defendant thereupon filed a petition to the General Term, in which it offered to bring into court the amount •of the judgment and costs, and prayed that an order should be made entering the judgment satisfied upon the payment of the amount thus tendered.
It is contended upon the part of the defendant: First, that under the language of the mandate, the lower court is required to examine into the nature of the action and ascertain whether it is one in which a plaintiff is entitled to interest from the rendition of the judgment (as in such eases only can interest be added, according to the order of the Supreme Court); and, second, that according to the law and practice of the courts of the District of Columbia, interest is not •chargeable in an action of tort like the present.
In our opinion, the words relied on, “ at the same rate per annum that similar judgments bear in the courts of the District of Columbia,” are not to be taken as directing an inquiry into the character of the action in which the judgment below was rendered, but -merely as indicating that the rate per centum, at which the interest must be computed, shall be no higher or lower than the legal rate in the jurisdiction where the judgment was originally recovered.
And this sufficiently appears from the statutes and from ■the rules of the Supreme Court bearing upon the subject.
Nothing could be more obviously just than that something in the way of penalty or additional costs should be applied, in the discretion of the appellate court, to deter frivolous appeals. Unless such power existed, the losing party would have every motive for an appeal, and none for acquiescing in the judgment below. And this would be especially the ■case where the judgment grew out of a personal action founded in tort, where, at common law, the death of either party would cause an abatement of the action. Accordingly, .at a very early day in England (1486), the statute 3 Henry VII, ch. 10, v?as passed, in these words :
“Item, That where oftentimes plaintiff or demandant, *460 plaintiffs or demandants, that have judgment to recover, be delayed of execution, for that the defendant or tenant, defendants or tenants, against whom judgment is given, or other, that been bound by the said judgment, sueth a writ or writs of error to annul and reverse the said judgment, to the intent only to delay execution of the said judgment: It is enacted, &c., * * * that if any such defendant or tenant, defendants or tenants, or any other, that shall be bound by the said judgment, sue, afore execution had, any writ of error to reverse any such judgment, in delaying of execution, that then if the same judgment be affirmed good in the said writ of error, and not erroneous, or that the said writ of error be discontinued in the default of the party, or that any person or persons that sueth writ or writs of error, be non-sued in the same, that then the said person or persons, against whom the said writ of error is sued, shall recover his costs and damages for his delay and wrongful vexation in the same, by discretion of the justice afore whom the said writ of error is sued,”
At common law, no costs were allowable on a writ of error ; and as there could be no damages, strictly speaking, on a writ of error, but outy a reversal or affirmance of the judgment, it was evident that the expression “ costs and damages ” was intended to give new penalties not previously existing. The fact that all interest .was considered usurious and illegal until the reign following the passage of this act, explains the failure of the courts to carry into effect its provisions by allowing interest by way of damages. The unwillingness of the judges to enforce the recovery of the damages in any form, was very clearly evinced by the passage of a subsequent act, the 19' Henry VII, chap. 20, which recites at length the passage of the former statute, and then proceeds as follows : “ Which act or ordinance hath not been as yet duly put in execution, by reason whereof, as well plaintiffs as demandants, in divers actions by them sued sith the making of the said statute, have been oftentimes delayed of their execution, to their great and importable hurt, loss and charges; wherefore, the King, our sovereign lord, by the *461 advice of the lords spiritual and temporal, and the commons, in this present Parliament assembled, and by authority of the same, ordaineth, establisheth and enaeteth, that the said act made the third year of his reign, concerning the premises, be good and effectual, and that from henceforth, it be duly put in execution.”
Both of these statutes were in force in Maryland. (Kilty, p. 228-30.)
Mr. Sellon, Vol. II, p. 446, says:
“It is observable that the statute of Henry VII particularly mentions costs and damages, clearly showing that the legislature intended something more than the mere costs. And indeed were it otherwise, it might often be advantageous to the party against whom judgment is obtained, to delay execution by writ of error, even upon payment of the costs, inasmuch as if the amount of such judgment were considerable, the very interest of the money, by delay of payment, might exceed the costs in the writ of error ; for this reason, therefore, interest from the time of signing the judgment until the affirmance thereof, is now generally allowed and added to the costs by way of damages.”
In 1781, in the case of Zinck vs. Lancton, Douglass, 749, Lord Mansfield said that the word “ damage,” in the statute, must mean something different from costs, as both words are used, and he determined that interest on the amount of the judgment ought to be the measure of such damages; and a rule was made absolute that the master should compute interest on the verdict from the day of signing final judgment below down to the time of the taxation of costs on the affirmance of the judgment.
And in Entwisle vs. Shepherd, 2d Term Rep., 78, which was an action brought on a judgment recovered in the Common Pleas, decided six years afterwards, Buller, J:, said : u Hnder the statute of Henry VII, it is now settled that the party has to pay interest on the judgment ; and provided by the course of the court, interest is not computed in the allowance of costs, the jury would give interest in the name of damages.”
*462 This was the state of the law in England when the act of Congress of 1789 was passed, which declared (Sec. 1010 Rev. Stats.), “where, upon a writ of error, judgment is affirmed in the Supreme Court, or a circuit court, the court shall adjudge to the respondent in error just damages for his delay and single or double costs at its discretion.”
In execution of this statutory provision, the Supreme Court originally adopted a rule fixing the “ damages” in the-form of interest at six per cent, except under special circumstances, where the rate was fixed at ten per cent. And in 3 Peters, 431, the court reformed a judgment rendered at a previous term, where the interest had been omitted, so that the judgment should read thus : “It is adjudged and ordered-by this court, that the judgment of said Circuit Court in this-case be, and the same is hereby, affirmed with costs and damages at the rate of six per centum per annum.”
This rule, giving a uniform rate of six per cent, interest without reference to the law in the State from which the-appeal was taken, worked injustice in those jurisdictionS-where the rate of interest exceeding that per centum, and this matter being brought to the attention of the court, inSneed vs. Wister, 8 Wheaton, 691, and in other cases, the rule was modified, at the December Term, 1851, to read as follows:
No. 62. “In cases where a writ of error is prosecuted in the Supreme Court and the judgment of the inferior court is affirmed, the interest shall be calculated and levied, from-the date of the judgment below until the same is paid, at the same rate that similar judgments bear interest in the courts of the State where such judgment is rendered.” “ The same rule shall be applied to decrees for the payment of money in cases in chancery, unless otherwise ordered by this court.”
This last rule was considered by Mr. Chief Justice Taney, in the case of Hemmenway vs. Fisher, 20 How., 255, in. which he says: “■ By this last mentioned rule, judgments at ¡common law and decrees in chancery, upon affirmance in this court, carry interest until paid; and the interest is to be- *463 calculated according to the rate of interest allowed in the State in which the judgment or decree of the court below was given.'>,
This construction of the statute and rule is that which is adopted by Mr. Curtis in his Commentaries, sec. 396. No distinction is made in this statute or in the rules of the Supreme Court as to the character of the action on which the judgment is rendered. The object of the interest by way of damages is to give the appellee just damages for his delay, and it is obvious that a greater necessity exists for discouraging appeals in actions in personam, for the reasons we have heretofore assigned, than in actions brought upon contracts where the suit can be continued notwithstanding the death of the party plaintiff'.
In our judgment the rule was intended to apply to all cases of appeals, at law or in equity, whatever may have been the form of the action.
Second. Speaking for myself alone, I will further sayy that if the propriety of the charge of interest on this judgment were dependent upon the character of the action, I have no doubt, in that event, equally, the plaintiff was entitled to recover interest on this judgment from the time of its rendition, at the rate of six per cent.
In opposition to this view it was argued that interest was not chargeable at common law on a judgment in tort. This is true, and it was equally true at the common law with respect to all contracts, and so remained until the 37 Henry VUE* ch. 9, which repealed the existing laws that denounced all reception of interest as usury. But from a very early day in Maryland interest was computed upon judgments, upon affirmance on appeal, and so far as I can see, without respect to the character of the action.
Naturally, the books of reports of the appellate courts' would seldom set forth the form of such entries in the lower courts ; but they do contain some cases on the subject.
Thus in Hook vs. Boteler, 3 H. & McH., decided in 1793, a judgment was recovered under the act of 9 Anne, ch. 14, which gave an action to recover back money won at gaming where over £10 was lost at a sitting. ’ The action was in no *464 sense founded upon contract, but was a statutory remedy to recover the money lost. The verdict was for the defendant, under the instruction of the court, but it was reversed in the court of appeals and judgment entered for £120 damages and costs, which damages were represented by interest upon the judgment.
So in Howard vs. Warfield, 4 H. & McH., 38, decided in 1797.
These cases were before the cession of the District by Maryland. The early Maryland cases, about the time of the cession, seem to admit the correctness of this practice, without refei’ence to the form of action. Contee vs. Findlay, 1 H. & J., 381 (1802); Johnson vs. Goldsborough, ibid, 499 (1804).
We were referred to the'act of June 24, 1812 (sec. 829 R. S. D. C.), as the earliest authority for the addition of interest upon any judgment in the courts of the District. That act provided, “ upon all judgments rendered on the common law side'of the court, in actions founded on contracts, interest at the rate of six per centum per annum shall be awarded on the principal sum due until the judgment shall be satisfied ; and the amount which is to bear interest, and the time from which it is to be paid, shall be ascertained by the verdict of the jury sworn in the case ; ” and it is insisted that no right to allow interest- on judgments existed before the passage of that act, and that it contains a distinct limitation of the allowance of interest to “ actions founded on contracts.”
What the purpose of the legislature was in passing this statute, we can only-conjecture. It may have been because the existing practice here was unknown to Congress; or because a different practice prevailed in the courts in the two portions of the District; or because the interest had been entered in different ways upon judgments rendered in the courts in the Maryland territory. Certain it is that it was not the origin of the practice of allowing interest upon judgments in those courts held in Washington city. We have examined the earliest dockets of the circuit court, *465 accessible at this time — those of 1802 — and we find that judgments were constantly entered, at that period, with an allowance of interest, in some cases from a date previous to the suit, and in others from the date of the judgment. The act of 1812, then, was not the origin of the practice. Nor do I see that it implies a negation of the right to interest upon judgments not founded upon contract. It only secures to the jury the power to allow interest in that class of cases from a date previous to the judgment; but it leaves the computation in actions of tort where, as I think, it had previously been, to be reckoned from, the date of the judgment.
Justices of the peace within the District have jurisdiction in a large class of civil cases, whether in debt or damage, or injury to person or property, and they are required to enter their judgments in dockets which they are obliged to keep. By section 1007 R. S. D. C., their “judgments shall bear interest from their date until satisfied,” and this by virtue of the act of March, 1823. No distinction is here made between judgments recovered in variant forms of action. The language embraces all judgments whether sounding in contract or tort. And no good reason can be perceived why a different rule should prevail with respect to judgments ren dered by justices of the peace and .those rendered by the superior courts of the District, especially as the judgment of the justice may become, by appeal, the judgment of the Supreme Court of the District. We should expect to find symmetry rather than needless disagreement between essential parts of the same system ; and the explicit language ol section 1007 must certainly go far towards clearing up any doubts as to the proper form of judgments in this court.
The language of our rule, No. 70, seems to recognize no difference between the form of entry of judgments in contract and in tort. Its language is: “ Whatever the cause of action may he, if the judgment be for the recovery of money, it shall be awarded generally, without any distinction of debt from damages, thus: “ It is considered that the plaintiff recover against the defendant $--, with interest as aforesaid,” &c.
*466 But I consider that the language of section 713 R. S. D. C. is almost conclusive of the question. It declares (speaking in 1870) that “the rate of interest on judgments or decrees * * * shall continue to be six per cent.; not upon judgments on contracts alone, but upon all judgments, as well as upon decrees, then for the first time specially designated in a statute as bearing interest. No sound reason can be assigned why the legislature should recognize the propriety of allowing interest upon a judgment arising out of a contract which would not equally apply to a judgment upon a tort. Indeed, the reason originally assigned at the common law for denying interest is confined, in terms, to the case of' a sum certain, payable at a given day. As formulated in the early authorities it amounted to this: that the action of debt was the only mode of recovering a sum certain, except where there was a breach of covenant, and in that action as. the defendant was commanded to render the debt, the payment of the specific sum, without anything more, answered the action and put an end to the suit; and thus the interest, forming no part of the original debt, was created only by the nature of the security. It was argued that this general rule would prevent acts of kindness from being converted into mercenary bargains ; and as it would thus be the interest of traders to press for payment, it would tend to check the pernicious extension of credit, so often injurious to both parties. Anderson v. Dwyer, 1 Sch. & Lefr., 303.
But none of these considerations apply to an action of tort. The jury is not called upon to determine that a specific sum was due at a designated day, and to add interest, as such, from the day named. They are simply to award compensatory or perhaps punitive damages in a just amount, which they return as their verdict, as a principal sum. And the question for consideration simply is whether a defendant in such a case, who may have maimed a plaintiff so-that he was in danger of death, or destroyed his property, or debauched his child, after using his wealth to put oft" the trial to the latest day, may delay payment of the-judgment with impunity, without liablity for a cent of interest, *467 while the plaintiff is following him through motions for a new trial, and prosecuting suits in equity to set aside conveyances, executed with the design of wearing out the-patience and exhausting the means of the person he has injured.
I can see no reason for any such discrimination in favor of such a class of defendants.
Again, I think the language of section 966 R. S. U. S., if not decisive of this question in itself, is certainly of the greatest force as showing what class of judgments was^ referred to by Congress when it fixed the rate of interest in the District of Columbia by section 713 R. S. D. C.
That section declares: “ Interest shall be allowed on all judgments in civil causes recovered in a circuit or district court, and may be levied,” &c., “ and shall be calculated from the date of the judgment at such rate as is allowed by law on judgments recovered in the courts of such States.”
No one can doubt that a judgment in tort, recovered in the Circuit Court in Baltimore would bear interest under this section. Why should a different rule prevail here, in favor of a defendant who has been found culpable, by the verdict of a jury? If this section applies to the courts of the District, it ends the inquiry. And if it be supposed that our local law should be the guide in the inquiry, then sec. 713 of the local law, when considered in the light of this section, must be held equally conclusive of the question before us.
In Gibson vs. Engine Co. (6th Ohio Circuit Reps., 136), the presiding justice held that where the entry of the judgment was delayed by the acts of the opposite party, interest on the verdict was proper, whether the action sounds in contract or in tort; and that if the action is upon contract the verdict draws interest from the first day of the term, but if ex delicto, from the date of the rendition of the judgment.
In the case of the District of Columbia vs. B. & P. Railroad Co., 1 Mackey, 380, the present defendant had been sued by the District to obtain the amount of a judgment recovered by one Barnes against the District, for an injury resulting from falling into an excavation in the street, made *468 by the railroad company. The District paid Barnes the amount of the judgment, with costs and interest from its rendition, and then brought suit against the company and recovered judgment, which was affirmed by the Supreme Court. The company, there, as in this case, insisted that it was only liable for the principal of the judgment recovered by Barnes, and that the District had paid him the interest in its own wrong and could not recover it from the company. The General Term decided that the company was liable to return to the District the entire amount it had paid to Barnes. And I regard this as a decision that Barnes was justly entitled to interest upon his judgment, for if - the interest was not a just charge against the District, the General Term could never have justified its exaction from the company. It surely would not have required the company to pay the fees of Barnes’ lawyers if the District had carelessly or wrongfully paid them, with the principal of the judgment. I think we decided this question, effectively, in that case, and for this reason, with the others I have mentioned, I consider it the law of this District that a judgment founded on a tort bears interest from its rendition to its satisfaction.